UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHARLENE TOBIN, et al.,

Plaintiff,

v.

BROOKE L. ROLLINS, IN HER OFFICIAL CAPACITY AS THE U.S. SECRETARY OF AGRICULTURE, et al.,

Defendants.

Case No. 2:25-cv-02259-CSK

ORDER

(ECF No. 41)

Pending before the Court is a motion for a preliminary injunction pending appeal by Plaintiffs Charlene Tobin, Carol Mrozek, and Craig Downer.[1]  (ECF No. 41.) A hearing was held on July 7, 2026 by Zoom. Randall Weiner appeared as counsel for Plaintiffs, and all Plaintiffs also attended the hearing. (ECF No. 45.) Jacob Jose appeared as counsel for Defendants Brooke L. Rollins, in her official capacity as the U.S. Secretary of Agriculture, the United States Forest Service, Doug Burgum, in his official capacity as the U.S. Secretary of the Interior, and the Bureau of Land Management. (Id.)

For the reasons that follow, the Court DENIES Plaintiffs' motion for a preliminary

---

[1]  This case proceeds before the undersigned pursuant to 28 U.S.C. § 636(c) for all purposes, including the entry of judgment, pursuant to the consent of all parties. (ECF Nos. 7, 10, 11.)

1

injunction pending appeal.

I.    BACKGROUND

    A.    Factual Background

The Court provides a brief overview of the factual background and incorporates the more detailed background in its February 20, 2026 summary judgment order. *See* 2/20/2026 Order (ECF No. 31).

Defendants United States Forest Service ("USFS") and Bureau of Land Management "BLM") co-manage federal public lands located in the Montgomery Pass Wild Horse Territory ("Territory"). AR 9401 (ECF No. 9). The Territory comprises the federal, state, and private lands inhabited by wild horses when the Wild Free-Roaming Horses and Burros Act was enacted by Congress on December 15, 1971. *Id.* In 1971, the Territory had an estimated wild horse population of 50 wild horses. AR 9401, 9418. Since the establishment of the Territory in 1971, the wild horse population has increased in an open range environment and in the absence of a population control program. AR 3387, 9401-02, 9418.

On November 7, 2023, Defendants BLM and USFS announced their proposal to gather and remove[2] excess wild horses located outside the Territory. AR 9408. After a 30-day public scoping period and 30-day public review and comment period, Defendants BLM and USFS issued an Environmental Assessment ("EA") (AR 9398-464). On March 7, 2025, Defendants BLM and USFS issued a Finding of No Significant Impact (AR 9897-9900), Decision Notice (AR 10066-72), and Decision Record (AR 9532-39) (collectively, "2025 Decision") concluding that wild horses residing outside the boundaries of the Territory (624 of the 694) are in excess and that removal is necessary to achieve and maintain a thriving ecological balance. AR 9534, 10066.

Plaintiffs Tobin, Mrozek, and Downer are, respectively, a primary physician and photographer, a documentary filmmaker, and a scientist and wildlife ecologist. Compl.

---

[2]  Throughout this order, the terms "gather" and "remove"/"removal" are used interchangeably.

¶¶ 7-9 (ECF No. 1). Plaintiffs opposed Defendants' proposed removal of excess wild horses. *Id.* ¶ 2.

### B.    Procedural Posture

Plaintiffs filed their Complaint on August 11, 2025, asserting four causes of action for violations of the Federal Land Policy and Management Act, 43 U.S.C. §§ 1701-1787; the Wild Free-Roaming Horses and Burros Act, 16 U.S.C. §§ 1331-1340 ("Wild Horse Act"); the National Environmental Policy Act, 42 U.S.C. §§ 4321-4370f ("NEPA"); the National Forest Management Act, 16 U.S.C. §§ 1600-1614; and the Administrative Procedure Act, 5 U.S.C. §§ 701-706. *See* Compl. On September 4, 2025, Plaintiffs moved for summary judgment on all four causes of action in the Complaint as to Defendants' alleged violations of the Wild Horse Act and NEPA.[3] (ECF No. 13.) On September 18, 2025, Defendants filed a cross-motion for summary judgment and opposition to Plaintiff's motion. (ECF Nos. 14, 15.) After briefing was complete on both motions, the Court held a hearing on January 20, 2026. (ECF No. 30.)

On February 20, 2026, the Court issued an Order denying Plaintiffs' motion for summary judgment and granting Defendants' motion for summary judgment in full. *See* 2/20/2026 Order. The Court held that the 2025 Decision does not violate the Wild Horse Act or NEPA and rejected Plaintiff's arguments that (1) Defendants' excess determination of wild horses was made arbitrarily and capriciously; (2) Defendants have not made a determination whether the removal of excess wild horses will maintain a thriving natural ecological balance within the Territory; and (3) the 2025 Decision will result in a reduction of wild horses well below the appropriate management level's lower limit within the Territory. *Id.* at 11-20. After the Court granted summary judgment for Defendants, the Clerk of the Court entered judgment for Defendants and closed this case on February 20, 2026. (ECF No. 32.)

---

[3]   As noted in the Court's summary judgment order, Plaintiffs abandoned their claims based on alleged violation of the National Forest Management Act or the Federal Land Policy and Management Act. 2/20/2026 Order at 9 n.5.

On April 21, 2026, Plaintiffs filed a notice of appeal of the Court's February 20, 2026 Order and Judgment. (ECF No. 35.) The appeal is pending before the Ninth Circuit in Case No. 26-2673. (ECF No. 37.)

On July 1, 2026, Plaintiff Charlene Tobin filed a pro se emergency motion for an injunction pending appeal. (ECF No. 39.) Because Plaintiffs are still represented by counsel in this district court, the Court disregarded Plaintiff Tobin's pro se motion and ordered Plaintiffs' counsel to file a counseled Motion for Emergency Injunction Pending Appeal or a status report indicating that Plaintiffs are not seeking the relief requested in Plaintiff Tobin's pro se motion. 7/2/2026 Minute Order (ECF No. 40). The Court ordered Defendants to file an opposition or statement of non-opposition to a counseled motion by Plaintiffs, and that if such a motion was filed, a hearing would be held on July 7, 2026 by Zoom.[4] *Id.*

On July 3, 2026, pursuant to the Court's July 2, 2026 Minute Order, Plaintiffs, through counsel, filed a Motion for Emergency Injunction Pending Appeal. (ECF Nos. 41, 42[5].) Defendants filed their opposition on July 6, 2026, and the Court held a hearing on July 7, 2026 by Zoom. (ECF No. 43.) The Court granted Plaintiffs' request that Plaintiff Tobin be permitted to address the Court at the hearing regarding the circumstances for Plaintiffs' requested injunction. (See ECF No. 41 at 2.)

## II.    LEGAL STANDARDS

Although in general the filing of a notice of appeal confers exclusive jurisdiction on the appellate court, Federal Rule of Civil Procedure 62(d) creates an exception: "While an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction," in which cases the district court may "suspend, modify, restore, or grant an injunction" during the pendency of the appeal. Fed. R. Civ. P. 62(d); *see also Mayweathers v. Newland*, 258

---

[4]  Counsel for Plaintiffs is located in Boulder, Colorado and counsel for Defendants is located in Washington, D.C.

[5]  Plaintiffs separately filed their Exhibit 14 on July 6, 2026, which appears to have been inadvertently omitted from their motion filed at ECF No. 41. (ECF No. 42.)

F.3d 930, 935 (9th Cir. 2001). Rule 62(d) "grants the district court no broader power than it has always inherently possessed to preserve the status quo during the pendency of an appeal; it does not restore jurisdiction to the district court to adjudicate anew the merits of the case." *Natural Res. Def. Council, Inc. v. Sw. Marine, Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001). Federal Rule of Appellate Procedure 8 requires that, before a party may move the appellate court, the party must move first in the district court for an injunction pending appeal. Fed. R. App. P. 8(a)(1)(C).

A motion for an injunction pending appeal is considered under a similar standard as that in assessing a motion for a preliminary injunction. *See S. Bay United Pentecostal Church v. Newsom*, 959 F.3d 938, 939 (9th Cir. 2020). "To prevail, the party seeking relief must show (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their favor, and (4) that an injunction is in the public interest." *Sanai v. Kruger*, 2023 WL 5496802, at *2 (N.D. Cal. Aug. 24, 2023) (quoting *Winter v. Natural Resources Defense Council. Inc.*, 555 U.S. 7, 20 (2008)); *accord Harrosh v. Tahoe Reg'l Plan. Agency*, 640 F. Supp. 3d 962, 984 (E.D. Cal. 2022); *Sierra Forest Legacy v. Rey*, 691 F. Supp. 2d 1204, 1207 (E.D. Cal. 2010). "If the government is the non-moving party, the last two factors—the balance of equities and public interest—merge." *Amazon.com Servs. LLC v. Nat'l Lab. Rels. Bd.*, 2025 WL 1766349, at *2 (C.D. Cal. June 9, 2025) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

## III.   DISCUSSION

Plaintiffs move for an emergency injunction pending appeal to halt Defendants' removal of wild horses outside the Territory beginning on July 8, 2026. Plaintiffs argue they have a likelihood of success on the merits of their appeal on the following grounds: (1) Defendants caused the wild horses' migration outside the boundaries of the Territory by failing to make sufficient water resources available for the horses on the Territory, Pls. Mot. at 10-14 (ECF No. 41-1); (2) Defendants' removal of excess wild horses outside the Territory is unlawful because Defendants unlawfully changed the Territory boundaries,

reducing the Territory's area by 77,000 acres in 1987, and therefore the excess horses are not properly considered off-Territory, *id.* at 14-17; (3) Defendants failed to develop a Herd Management Area Plan of the Territory prior to its decision to remove the wild horses, *id.* at 17-18; and (4) Defendants' findings are incorrect that off-Territory wild horses affect the Thriving Natural Ecological Balance in the areas they are present, *id.* at 19-20. As discussed, Plaintiffs' first and second arguments are new arguments that were not raised on summary judgment.

Plaintiffs also argue they have established irreparable harm because the wild horses subject to removal will be at risk of death during capture, separated from other members of the herd, or sold to slaughter. Pls. Mot. at 21. Finally, Plaintiffs assert an injunction pending appeal favors the public interest in preserving the wild horses. *Id.* at 23-24.

### A.    Preliminary Matters

The Court first addresses three preliminary matters before turning to the motion's merits. First, at the July 7, 2026 hearing, Plaintiffs' counsel made an oral motion to withdraw as Plaintiffs' counsel, noting that Plaintiffs are proceeding pro se on appeal. Counsel also noted that he was prepared to go forward with the hearing as counsel if the motion was denied. Defendants opposed the oral motion. At the hearing, it was apparent that Plaintiffs did not have notice that their counsel would be moving to withdraw as counsel at the hearing. Given that the notice of appeal was filed over two months ago, Plaintiffs' counsel did not move to withdraw as counsel in district court before counsel's oral motion at the hearing, Plaintiffs were not aware that their counsel would be making such a motion, and the legal issues presented, the Court DENIES without prejudice Plaintiffs' counsel oral motion to withdraw as counsel.

Second, <u>after</u> Defendants filed their opposition on July 6, 2026, Plaintiff Tobin filed a Supplemental Declaration without leave of court. (ECF No. 44.) This Supplemental Declaration is unsigned and has a filing date of July 6, 2026, but was not docketed until July 7, 2026, after the hearing scheduled for 10:00 a.m. As a result,

6

Defendants and the Court did not have the opportunity to review the Supplemental Declaration before the hearing and Plaintiffs did not alert the Court of this new supplemental filing during the hearing. Unsigned filings and declarations are not properly considered. Further, Plaintiff Tobin's Supplemental Declaration was filed late, after Defendants' opposition was filed, and without leave of court. The Court declines to consider this late, unsigned Supplemental Declaration.

Third, Plaintiffs have submitted evidence outside the administrative record in support of their arguments, including wildlife ecologist reports, photographs taken by Plaintiff Tobin, and other reports. *See* Pls. Mot., Exhs. 2, 3, 4, 9, 11, 12, 13, 14, 15. Defendants object to Plaintiffs' extra-record evidence. *See* Defs. Opp'n at 5 n.2.

Generally, on review of agency action under the Administrative Procedure Act, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Supplementary evidence may be justified: "(1) if admission is necessary to determine whether the agency has considered all relevant factors and has explained its decision, (2) if the agency has relied on documents not in the record, (3) when supplementing the record is necessary to explain technical terms or complex subject matter, or (4) when plaintiffs make a showing of agency bad faith." *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (citation and internal quotation marks omitted). "These exceptions are to be narrowly construed, and the party seeking to admit extra-record evidence initially bears the burden of demonstrating that a relevant exception applies." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992-93 (9th Cir. 2014).

Here, Plaintiffs have not identified which, if any, exception applies to consider its extra-record evidence to the extent it is submitted in support of a finding of a likelihood of success on appeal. Nor may Plaintiffs rely on extra-record evidence that post-date the 2025 Decision because "[p]arties may not use post-decision information as a new rationalization either for sustaining or attacking the Agency's decision." *Ctr. for Biological*

*Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 943 (9th Cir. 2006). But even if the Court were to consider Plaintiffs' extra-record evidence for purposes of a merits determination, Plaintiffs have not met their burden of showing the 2025 Decision was arbitrary and capricious, i.e., that Defendants "fail[ed] to consider important aspects of the issue before it, . . . support[ed] its decisions with explanations contrary to the evidence, or [their] decision [was] either inherently implausible or contrary to governing law." *Cent. Oregon Wild Horse Coal. v. Vilsack*, 2025 WL 25696, at *1 (9th Cir. Jan. 3, 2025).

Courts may consider, however, extra-record evidence to assess irreparable harm, the balancing of equities, and the public interest. *See Souza v. California Dep't of Transportation*, 2014 WL 1760346, at *7 n.1 (N.D. Cal. May 2, 2014) (courts may consider extra-record evidence for irreparable harm); *E. Bay Sanctuary Covenant v. Trump*, 354 F. Supp. 3d 1094, 1107 (N.D. Cal. 2018) (courts may consider extra-record evidence for balance of equities and public interest).

**B.    New Arguments Raised on Motion for Injunction Pending Appeal**

Plaintiffs have raised two new arguments in their Motion for Emergency Injunction Pending Appeal that were not raised at summary judgment:[6] (1) Defendants caused the wild horses' migration outside the Territory by their alleged mismanagement of water resources for horses in the Territory, and (2) Defendants unlawfully altered the Territory's boundaries. Pls. Mot. at 10-17. As a threshold matter, these arguments fail to support a likelihood of success on appeal because they were not raised prior to the Court's entry of final judgment and therefore lack reviewability on appeal. The Ninth Circuit has held that it does not consider arguments raised for the first time on appeal unless "(1) there are exceptional circumstances why the issue was not raised in the trial court; (2) the new issue arises while the appeal is pending because of a change in the law; or (3) the issue presented is a pure question of law and the opposing party will

---

[6]    As a case challenging federal government agency action, this case was decided on the merits at summary judgment. *See* 2/20/2026 Order.

suffer no prejudice as a result of the failure to raise the issue in the trial court." *Momox-Caselis v. Donohue*, 987 F.3d 835, 841-42 (9th Cir. 2021).

Here, Plaintiffs have not identified any exceptional circumstances explaining why they failed to present these new arguments on summary judgment, and the Court has not identified any such circumstances in the record. At oral argument, Plaintiffs conceded that the Territory boundaries argument was not raised at summary judgment. Plaintiff argued that the water issue was referenced in the Complaint at Paragraph 51, and this issue is part of their challenge to Defendants' failure to prepare a herd management area plan ("HMAP"). Plaintiffs were not, however, able to identify where in their summary judgment briefing they raised this argument. Though Plaintiffs do refer to the lack of adequate water as one of the reasons horses migrated out of the Territory in their Complaint and summary judgment briefing, this is different from their argument in this emergency motion—that Defendants caused the wild horses' migration outside the Territory by their alleged mismanagement of water resources for horses in the Territory. *See* Compl. ¶¶ 71, 97; Pls. MSJ at 5, 10 (ECF No. 13); Pls. MSJ Reply at 1, 3 (ECF No. 19).

Further, Plaintiffs' new arguments do not arise out of a change in the law occurring since the Court's February 20, 2026 Order, nor do they present pure questions of law. Accordingly, the Court declines to consider Plaintiffs' new arguments.[7] Plaintiffs

---

[7]    Even if the Court were to consider the merits of Plaintiffs' argument that Defendants unlawfully altered the Territory's boundaries in 1987, Defendants respond that the Territory boundaries have remained substantially the same. *See* Defs. Opp'n at 7. The administrative record appears to support Defendants' position rather than Plaintiffs' position. The 1979 Environmental Assessment in the administrative record indicates that the boundaries of the Territory as of 1979 covered 207,921 acres. AR00048-50. Similarly, the 2024 EA states that the Territory "encompass[es] approximately 207,921 acres." AR09401; *compare* AR00050 (1979 EA map), *with* AR09232 (2024 EA map). Thus, it is unclear why Plaintiffs raise this argument, relying on a 2015 study, to argue that the Territory was reduced by 77,000 acres in 1987. *See* Pls. Mot. at 14, Exh. 7. In addition, this 2015 study was part of the Administrative Record and Plaintiffs present no explanation as to why this new argument was not raised below. *See* AR03384-413 (John W. Turner Jr, Environmental influences on movements and distribution of a wild horse (Equus caballus) population in western Nevada, USA: a 25-year study, J. Nat. Hist.

cannot establish a likelihood of success on these arguments because no exception applies for the Ninth Circuit to consider them on appeal. *See Raich v. Gonzales*, 500 F.3d 850, 868 (9th Cir. 2007) (declining to consider new arguments on appeal where plaintiff failed to overcome presumption against hearing new arguments, such as by citing exceptional circumstances why arguments were not raised below); *United States v. Antonakeas*, 255 F.3d 714, 721 (9th Cir. 2001) (same).

### C.    Likelihood of Success on Merits of Appeal

Though likelihood of success on the merits is also considered as a factor for a motion seeking an injunction pending appeal, "[s]everal courts have observed that the 'success on the merits factor cannot be rigidly applied,' because if it were, an injunction [pending appeal] would seldom, if ever, be granted 'because the district court would have to conclude that it was probably incorrect in its determination on the merits.'" *Protect Our Water v. Flowers*, 377 F. Supp. 2d 882, 884 (E.D. Cal. 2004) (quoting *Oregon Natural Res. Council v. Marsh*, 1986 WL 13440, at *1 (D. Or. 1986)); *see also NetChoice v. Bonta*, 761 F. Supp. 3d 1232 (N.D. Cal. 2025) ("Applying the preliminary injunction factors can create some tension when a party seeks to appeal a district court's denial of a preliminary injunction."). "Such a result would not be consistent with the express language of Rule 62[d] which contemplates the possibility that the district court may grant an injunction pending appeal from an [ ] order denying [an] injunction." *Am. Beverage Ass'n v. City & Cty. of San Francisco*, 2016 WL 9184999, at *2 (N.D. Cal. June 7, 2016). Therefore, an injunction pending appeal may be appropriate when "'the trial court is charting a new and unexplored ground' by 'ruling on an admittedly difficult legal question, and when the equities of the case suggest that the status quo should be maintained.'" *NetChoice*, 761 F. Supp. 3d at 1236 (quoting *Protect Our Water*, 377 F. Supp. 2d at 884). "That said, the fact that a court previously found that a[n] [ ] injunction

(2015)); AR03388 (("In 1987 the Inyo National Forest and BLM partnered in MPWHT management and formed a Coordinated Resource Management Planning committee, which adjusted the MPWHT map boundaries to more appropriately reflect horse use.").

was not warranted should carry significant weight, so . . . . [o]nly when the legal question raised is particularly important and 'serious questions going to the merits' have been raised should a district court consider such a course of action. *NetChoice*, 761 F. Supp. 3d at 1236 (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011)).

Here, Plaintiffs' two remaining arguments in support of a likelihood of success on appeal are that (1) Defendants failed to develop a Herd Management Area Plan of the Territory; and (2) Defendants are wrong that the wild horses living outside the Territory's boundaries have a negative impact on the Thriving Natural Ecological Balance where they are present. Pls. Mot. at 17-20. This Court previously rejected similar arguments at the summary judgment stage. First, the undersigned held that "[a]lthough Plaintiffs argue the 2025 Decision was made arbitrarily because it was made without a herd management area plan and therefore decided 'blindly,' Defendants were not required to prepare a herd management area plan for a herd area outside a designated herd management area." 2/20/2026 Order at 13. Second, the undersigned further held that "the administrative record supports the 2025 Decision that the removal of excess wild horses outside the Territory was necessary to achieve and maintain a thriving natural ecological balance in areas not designated for the management of wild horses and that are being managed for natural resource values. . . . Accordingly, Plaintiffs have not established that Defendants acted in an arbitrary and capricious manner." *Id.* at 16.

Neither of the Court's prior conclusions at the summary judgment stage involved "new and unexplored ground" or a "difficult legal question." *NetChoice*, 761 F. Supp. 3d at 1236 (citation omitted). Nor do Plaintiffs' arguments in their current emergency motion raise "serious questions going to the merits" of their claims. *See id.* (citation omitted). In addition, Plaintiffs have not identified error in the Court's summary judgment ruling. Accordingly, Plaintiffs have not established a likelihood of success on the merits of their appeal to justify an injunction pending appeal. *See Sierra Forest Legacy v. Rey*, 691 F. Supp. 2d 1204, 1208 (E.D. Cal. 2010) (no likelihood of success where Plaintiffs failed to

identify error in court's summary judgment analysis, repeated prior arguments, and provided no grounds to revisit conclusions reached on summary judgment); *Env't Prot. & Info. Ctr. v. U.S. Forest Serv.*, 2006 WL 2084856, at *2 (E.D. Cal. July 25, 2006) (same).

### D.      Irreparable Harm

Plaintiffs argue that the removal of wild horses beginning on July 8, 2026 will cause irreparable harm in several ways. First, Plaintiffs argue that a gather will result in significant deaths of wild horses due to stampeding or other events during capture, including newborn foals and pregnant mares. Pls. Mot. at 21, 22. Second, Plaintiffs argue the sub-herd groups developed by the wild horses will be irreversibly split during removal. *Id.* at 21. Third, Plaintiffs argue that some wild horses will be "sold into the slaughter pipeline" because "[o]nly a small percentage of captured wild horses are ever adopted, and slaughter is not limited to older horses." *Id.* Fourth, Plaintiffs argue that gather by helicopter will negatively affect field research, equine ecotourism, and Plaintiff Mrozek's in-progress documentary of the wild horse herds. *Id.* at 22.

Although the Court recognizes that Plaintiffs have expressed sincere concerns about the effects of the upcoming removal process and their genuine dedication to and love of wild horses, Plaintiffs have not made a sufficient showing of irreparable harm to support an injunction pending appeal.

#### 1.      Delay

At the outset, the Court has concerns regarding Plaintiffs' delay in bringing this motion for emergency injunctive relief. A party's delay in filing a motion for an injunction pending appeal may weigh against a finding of irreparable harm. For example, in *Demartini v. Microsoft Corp.*, the district court denied Plaintiffs' motion for injunctive relief pending appeal to "hold separate" two merging entities because "Plaintiffs inexplicably waited five months, until the eve of the merger's closing, to file a motion requesting injunctive relief noticed to be heard well after the merger was to have—and in fact did— close." 2023 WL 7346402, at *1 (N.D. Cal. Nov. 7, 2023). Likewise, in *M&T Bank v. SFR Invs. Pool 1, LLC*, the district court denied the defendant's emergency motion for an

injunction pending appeal to stop the foreclosure of property where summary judgment had been granted ninth months before the motion and the defendant "waited until three business days before the foreclosure sale to file 'emergency' motions for a temporary restraining order and preliminary injunction." 2019 WL 3577645, at *3 (D. Nev. Aug. 6, 2019).

Here, the Court granted summary judgment for Defendants and entered final judgment for Defendants on February 20, 2026. (ECF Nos. 31, 32.) Plaintiffs appealed the order and judgment on April 21, 2026. (ECF No. 35.) Thus, since at least April 21, 2026, if not after the Court's February 20, 2026 summary judgment order, Plaintiffs knew that Defendants could potentially begin the process to remove excess wild horses. But Plaintiffs did not seek an injunction pending appeal when they filed their notice of appeal or even close in time after they filed their notice of appeal. On June 22, 2026, Defendants USFS and BLM publicly announced that they would initiate a helicopter gather of wild horses located outside the Territory beginning July 8, 2026. Pls. Mot., Exh. 1 (ECF No. 41-4). Even then, nothing was filed in this case until Plaintiff Tobin filed a pro se motion on July 1, 2026, followed by a counseled motion (pursuant to the Court's July 2, 2026 Minute Order) filed on July 3, 2026—seven to five days before the gather is scheduled to commence. (ECF Nos. 39, 41.)[8] While the Court is sympathetic to Plaintiffs proceeding pro se on appeal, Plaintiffs were and are represented by counsel in this district court, and before the oral motion made during the July 7, 2026 hearing, Plaintiffs' counsel never filed a motion to withdraw as counsel in the district court case. Even were the Court to consider Plaintiffs' pro se status on appeal, this does not excuse waiting over two months to file their motion for an injunction pending appeal, especially when Plaintiffs stated at the hearing that they knew or heard the roundup would occur in the summer.

Thus, Plaintiffs' delay to file their motion for an injunction pending appeal over four

---

[8]   Additionally, the Court notes that Plaintiffs' counseled motion (ECF No. 41) is substantially similar to the pro se motion (ECF No. 39).

months after the Court's summary judgment ruling, over two months after filing their notice of appeal, and just five to seven days before Defendants' gather is scheduled to commence,[9] suggests that "by failing to effectively manage this case, [Plaintiffs] created this emergency and comes to the court with unclean hands." *M&T Bank*, 2019 WL 3577645 at *3. Accordingly, Plaintiffs' delay in bringing the Motion for Emergency Injunction Pending Appeal weighs against a finding of irreparable harm. *See Demartini*, 2023 WL 7346402, at *1; *Galderma Lab'ys L.P. v. Lupin Inc.*, 2024 WL 5431488, at *4 (D. Del. Apr. 11, 2024) (holding that delay militated against the issuance of an injunction pending appeal of patent infringement claim where court announced the outcome of the case on February 22, issued opinion on March 22, final judgment was entered on April 1, and Plaintiff waited until April 4 to file its emergency motion).

### 2.   Irreparable Harm

Defendants assert that, because the planned removal "aims to remove horses that reside *permanently* off Territory," Plaintiffs have alleged harms only as to wild horse populations living outside the Territory. Defs. Opp'n at 8 (emphasis added) (ECF No. 43). Defendants argue that there is therefore a mismatch between Plaintiffs' alleged harms and their requested relief in the proposed order, which seeks to enjoin the removal of wild horses only "from the Montgomery Pass Wild Horse Territory," not outside of the Territory. (ECF No. 41-17.)

Although Plaintiffs' requested relief is unclear, the Court agrees with Defendants that Plaintiffs have not established irreparable harm to the extent that Defendants seek to remove only the wild horses located *outside* the Territory (as set out in the EA and 2025 Decision) and Plaintiffs' motion seeks an injunction limited to horses located *inside* the Territory. *See* Defs. Opp'n at 8-9. However, for purposes of examining whether Plaintiffs have otherwise shown irreparable harm as to wild horses living outside the Territory, the Court will assume that Plaintiffs seek injunctive relief to prevent the July

---

[9]   The Court also notes that Plaintiffs filed their emergency motion on the eve of a federal court holiday.

2026 removal in its entirety.

Plaintiffs argue that gather by helicopter will negatively affect field research, equine ecotourism, and Plaintiff Mrozek's in-progress documentary of the wild horse herds. Defendants argue that Plaintiffs have not established a cognizable harm based on the effects of a helicopter gather on wild horses living outside the Territory because Plaintiffs lack the right to observe a particular number of horses. Defs. Opp'n at 9. The Court agrees to the extent Plaintiffs allege harm based on the effects of removal on field research, equine ecotourism, and Plaintiff Mrozek's documentary production. "The Court is unaware of any enforceable right to observe a particular number of animals." *See In Def. of Animals v. U.S. Dep't of Interior*, 737 F. Supp. 2d 1125, 1138 (E.D. Cal. 2010). Here, Defendants July 8 gather is limited to areas outside the Territory's boundaries. Thus, wild horses within the Territory are not being removed, and Plaintiffs have not indicated that they cannot continue their observation of horses *inside* the Territory. Accordingly, because Plaintiffs have not shown that their academic or aesthetic interests will be entirely destroyed by Defendants' planned removal of wild horses outside the Territory, Plaintiffs have not established irreparable harm. *See In Def. of Animals*, 737 F. Supp. 2d at 1138 (holding that irreparable injury not established for preliminary injunction where plaintiffs argued their ability to study and observe particular family bands would be affected by gather of wild horses).

### 3.    Unsupported Allegations of Harm

Plaintiffs' other allegations of irreparable harm, namely, that the gather and removal will result in death, separation of sub-herd units, or the sale of wild horses for slaughter, lack supporting evidence and are speculative. For this additional reason, Plaintiffs have not established irreparable injury. *See In Def. of Animals*, 737 F. Supp. 2d at 1138 (no irreparable injury where "it is sheer speculation that any particular individual or family unit will be affected" by gather).

/ / /

/ / /

**E.    Balance of Equities and Public Interest**

The balance of equities and the public interest weigh in favor of Defendants.[10] The Wild Horse Act requires Defendants to "immediately" remove horses determined to be excess. *See In Def. of Animals, Dreamcatcher Wild Horse & Burro Sanctuary v. U.S. Dep't of Interior*, 751 F.3d 1054, 1062 (9th Cir. 2014) ("BLM is *required* to remove wild horses and burros from a given area of the public lands when an overpopulation exists.") (emphasis in original) (citing 16 U.S.C. § 1333(b)).

The 2025 Decision identified excess wild horses living outside the Territory and determined that removal of the excess wild horses would "eliminate ongoing impacts to archaeological resources caused by displacement of artifacts, damage to features, erosion and breakage" (AR 9428-29); "may reduce the spread of invasive species and allow native vegetation communities to be more resilient to wildfire" (AR 9430); "impacts to tufa from trailing, trampling, and rubbing by wild horses would be substantially reduced, if not eliminated" (AR 9431-32); "reduce or eliminate the potential for wild horse/vehicle collisions and improve visitor safety" (AR 9432-33); "would likely result in a reduction in vectors of spread as well as fewer disturbed sites that are vulnerable to invasion" (AR 9433-34); and removal of excess wild horse "increase forage availability and quality, minimize competition for water and forage between livestock and wild horses, and improve vegetative resources" (AR 9434-46).

Accordingly, the balance of equities and the public interest weigh against an injunction pending appeal because the administrative record indicates that Defendants determined that it must remove excess wild horses located outside the Territory for the sake of various public interests, including environmental interests. *See In Def. of Animals*, 737 F. Supp. 2d at 1139-40 (denying preliminary injunction where public interest favors gather because BLM established overpopulation of wild horses);

---

[10]  Plaintiffs' motion does not expressly address the balance of equities prong of the *Winter* test, whereas Defendants address this prong simultaneously with the public interest prong.

*Kohleriter v. Dep't of Agric.*, 2025 WL 2986725, at *5 (E.D. Cal. Oct. 23, 2025) (denying preliminary injunction where balance of equities and public interest tip in favor of "both maintaining control of the wild horse population and the efficient usage of government funds").

**IV.    CONCLUSION**

In conclusion, IT IS HEREBY ORDERED that Plaintiffs' Motion for Emergency Injunction Pending Appeal (ECF No. 41) is DENIED.

Dated:  July 7, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

8, tobi.2259.25